UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM G. STEPHENS and NORMA STEPHENS,<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | Case No. 1:17-cv-00385-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Union Pacific Railroad Company's Motion for Judgment on the Pleadings (Dkt. 30), Union Pacific's Motion for Summary Judgment and, in the alternative, Motion for Partial Summary Judgment (Dkt. 39), Union Pacific's Motion to Take Judicial Notice (Dkt. 31), and William and Norma Stephens' Motion for Partial Summary Judgment as to Affirmative Defenses (Dkt. 40). The motions are fully briefed, and the Court heard oral argument on July 17, 2018. The Court now issues the following Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiff William Stephens was born in 1944 in Weiser, Idaho, and resided there until 1954. *Compl.* ¶ 7, Dkt. 1. During that time, Union Pacific employed Stephens's

father, Rollie Stephens, at its Weiser roundhouse. *Id.*; *Coleman Letter* at 1, Dkt. 46. The Stephens allege Rollie Stephens was responsible for performing maintenance work on steam engines, including the removal of insulation which, along with other products used at Union Pacific facilities, contained amosite asbestos. *Compl.* ¶¶ 7, 8, Dkt. 1.

The Stephens allege Rollie Stephens brought asbestos dust home on his clothing and person from work at the Weiser roundhouse, exposing his son to carcinogenic dust. *Id.* at ¶ 9. They further allege Stephens's exposure to the asbestos carried home from his father's work on steam locomotives was a substantial factor in causing his mesothelioma. *Id.* at ¶ 10.

The Stephens brought suit against Union Pacific in September 2017. *Id.* at ¶ 3, pp. 19. The action is before this court upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Complaint alleges four causes of actions: (1) negligence, (2) gross negligence/recklessness, (3) strict liability for an abnormally dangerous activity, and (4) loss of consortium. *Id.* at ¶¶ 30-48. At oral argument, the Stephens indicated they are forgoing Count Three and proceeding on the remaining causes of action.

## JUDGMENT ON THE PLEADINGS LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Judgment is appropriate when the moving party establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896

F.2d 1542, 1550 (9th Cir. 1990). In ruling on such a motion, the court must accept the allegations of the non-moving party as true. *Id.*

In determining whether a complaint states a cognizable claim under Rule 12(c), courts apply the same legal standards applicable to motions brought under Rule 12(b)(6). *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054, n.4 (9th Cir. 2011) ("we have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule").

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

If the court looks to evidence beyond the pleadings, the motion must be converted into one for summary judgment. Fed. R. Civil P. 12(d). But the court may consider attachments to the complaint and documents referred to in the complaint though not attached to it, where authenticity is not in question. *Hal Roach Studios*, 896 F.2d at 1555 n. 19; *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982).

Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts

compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

## SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

I.  **Judgment on the Pleadings**

Union Pacific argues that it is entitled to Judgment on the Pleadings because Stephens cannot recover against Union Pacific as a matter of law. *Motion J. Pleadings* at 1, Dkt. 30. Union Pacific argues that the Locomotive Inspection Act, 45 U.S.C. § 20701, *et seq.* ("LIA") completely bars the Stephens' lawsuit "because Congress has the exclusive jurisdiction to regulate locomotive equipment." *Id.* Because the only asbestos to which Stephens contends he was exposed is asbestos contained in locomotive equipment, Union Pacific contends this Court does not have jurisdiction to hear the case. *Id.*

   A.  **Federal Preemption**

"The Supremacy Clause empowers Congress to supplant decentralized, state-by-state regulation with uniform national rules." *Law v. Gen Motors Corp.*, 114 F.3d 908, 909 (9th Cir. 1997) (citing U.S. Const. Art. VI, cl. 2.); *see also Brown v. Hotel and Restaurant Employees and Bartenders Intern. Union Local 54*, 468 U.S. 491, 501 (1984) (stating that state law which interferes with federal law "creates an actual conflict and is pre-empted by direct operation of the Supremacy Clause"). Even without an express provision for preemption, "state law must yield to a congressional Act in at least two circumstances." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000). The first circumstance is when "state law is naturally preempted to the extent of any conflict with a federal statute." *Id.* The second circumstance, referred to as "field

preemption," was considered in *Kurns* and is germane to the issue here. 565 U.S. at 630-31. Field preemption occurs when a federal statute is deemed to implicitly override state law, because "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively". *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

In *Napier v. Atl. Coast Line R.R. Co.*, the Supreme Court held in an action regarding state regulations of locomotive equipment that state legislation is precluded because the Boiler Inspection Act[1] occupied the field of regulating locomotive equipment. 272 U.S. 605, 610 (1926) (stating "[b]ecause the standard set by the [Interstate Commerce] Commission must prevail, requirements by the states are precluded, however commendable or however different their purpose").

More recently, the Supreme Court has revisited the issue in *Kurns v. Railroad Friction Products Corp.*, 565 U.S. 625 (2012), and both parties acknowledge that *Kurns* is critical to the issue before the Court. *Motion J. Pleadings* at 1, 9-12, 14-26, Dkt. 30; *Mem. Opp'n J. Pleadings* at 2, 9-12, 16, 18, Dkt. 33. In *Kurns*, a railroad machinist alleged state-law claims of defective design and failure to warn of the dangers of asbestos exposure against a railroad corporation following his diagnosis of mesothelioma. 565 U.S. at 628-29. *Kurns* reaffirmed *Napier* and held the LIA pre-empted those claims because they were directed at the field of locomotive equipment. *Id.* at 637. The Court

---

[1] The Boiler Inspection Act is the predecessor to the LIA. *See Kurns*, 565 U.S. at 629 (2012).

must determine whether the Stephens' claims are directed toward locomotive equipment and thus pre-empted by the LIA.

Negligence is not the basis for liability under the LIA. *Lilly v. Grand Trunk R.R. Co.*, 317 U.S. 481, 485 (1943) (noting that the LIA instead "imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate without unnecessary peril to life and limb") (quotations omitted). The LIA's pre-emptive scope encompasses state common-law duties and standards of care "directed to the subject of locomotive equipment." *Kurns*, 565 U.S. at 637.

The Stephens' claim is directed at the subject of locomotive equipment and is thus preempted by the LIA. *See id.* Because there is no remedy available for the Stephens' Complaint, Union Pacific would be entitled to judgment as a matter of law if they had properly pled preemption as an affirmative defense. *See Hal Roach Studios*, 896 F.2d at 1550. Taking the Stephens' allegations as true, there are no set of facts where they would be able to recover under this claim. Indeed, so much is indicated by the captions in Stephens' Complaint, describing their overarching general allegation: "Plaintiff Sustained Toxic Exposure to Asbestos From Union Pacific Locomotives." *Compl.* at p. 3, Dkt. 1 (emphasis omitted).

The Stephens attempt to distinguish their case by noting they are pursuing a different type of claim from the petitioners in *Kurns*. *Memo. Opp. Mot. Dismiss* at 2, Dkt. 33. In *Kurns*, petitioners argued their failure to warn claims did not fall "within the LIA's

pre-empted field because the basis of liability for failure to warn…is not the design or manufacture of a product, but is instead the failure to provide adequate warnings regarding the product's risks." 565 U.S. at 634 (internal quotations omitted). The Supreme Court disagreed, finding that the subject of the claim is the relevant determination in the question of the claims being preempted. *Id.* at 635 (noting that "the gravamen of petitioners' failure-to-warn claims is still that [petitioner] suffered harmful consequences as a result of his exposure to asbestos contained in locomotive parts and appurtenances") (citations and internal quotations omitted).

The Stephens contend the subject of their claim is not in fact locomotive equipment, but that Union Pacific negligently exposed Stephens to a "dangerous worksite condition." *Memo. Opp. Mot. Dismiss* at 2, Dkt. 33. But the term "dangerous worksite condition" appears only once in their Complaint, stated within a claim they are no longer pursuing. *Compl.* ¶ 43, Dkt. 1. The idea that the Stephens' claim is directed toward a dangerous worksite condition is refuted by the plain language of Paragraph 43 of the Complaint:

> "[The removal of insulation] was abnormally dangerous because the dust *from the insulation*, containing inherently toxic and unreasonably dangerous asbestos fibers, could accumulate unnoticed on and within employee clothing, and then be transported back to the employees' home, unwittingly exposing his family to a dangerous worksite condition."

*Compl.* ¶ 43, Dkt. 1 (emphasis added). The "dangerous worksite condition" in the Stephens' complaint is predicated upon asbestos released from the removal of insulation on Union Pacific's steam locomotives. The "gravamen" of the Stephens' claims,

therefore, is that Stephens "suffered harmful consequences as a result of his exposure to asbestos contained in locomotive parts and appurtenances." *See Kurns*, 565 U.S. at 635.

The Stephens rely upon *Terminal Railroad Ass'n of St. Louis v. Bhd. of R.R. Trainmen*, which dealt with a state law requiring the use of a caboose on a rail car. 318 U.S. 1, 4 (1943). In the absence of caboose cars, workers were being thrown from moving trains. *Id.* at 3. The Court held LIA did not preempt the Illinois-mandated caboose requirement because state laws "have long regulated a great variety of conditions in transportation and industry, such as sanitary facilities and conditions, safety devices, and protections." *Id.* at 6-7. Nonetheless, *Terminal Railroad* is inapposite for the instant case[2]: unlike the circumstances in *Kurns* and the instant case where the subject of litigation was insulation pulled from steam engines, there was no federal regulation relating to cabooses and thus the LIA and other federal regulations did not apply. *Id.* at 4.

The Stephens' claim could not be cured with leave to amend. *See Cook, Perkiss and Liehe, Inc.* 911 F.2d at 247. The Stephens allege the source of the fibers to which they claim exposure is asbestos-containing products from Union Pacific's locomotives. Compl. at ¶¶ 2, 7, 8, 20, 21, 29, 43. Amending the complaint to allege exposure from a

---

[2] Additionally, the Stephens cite *Union Pacific R. Co. v. California Pub. Utilities Comm'n*, 346 F.3d 851 (9th Cir. 2003). There, the state adopted regulations mandating the railroad's compliance with train configuration requirements after a series of train derailments. *Id.* at 856-58. The Court held the LIA did not preempt the regulations because the regulations had no effect on "the design, construction, and the material" of locomotives, but instead regulated "the use of locomotives." *Id.* at 869 (emphasizing the LIA occupies "the field of locomotive equipment, but not locomotive use"). The Stephens' reliance on *Union Pacific R. Co.* is inapposite for a similar reason: unlike the instant case and *Kurns*, it was directed toward train configuration, which was not the subject of the LIA or federal regulation.

"toxic worksite condition" would still not cure the Stephens' complaint because they allege the only cause of Stephens's mesothelioma is asbestos and the only source of that asbestos is Union Pacific's locomotives. *Compl.* ¶¶ 10, 26, 36, 40. Providing too much in the complaint can be fatal to a plaintiff. Dismissal may be appropriate if the plaintiff has included sufficient allegations disclosing an absolute defense or bar to recovery. *See Weisbuch*, 119 F.3d at 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts"). The Stephens' Complaint disclosed a bar to recovery: their claim was directed at locomotive equipment and pre-empted by the LIA. The Court is unable to create a cause of action under the LIA, no matter how desirable it would be to allow the Stephens to recover for this tragic, catastrophic injury. *See Alexander v. Sandoval*, 532 U.S. at 286 (stating that without statutory intent to create a cause of action, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible the statute").

### B. Waiver

The Stephens argue that even if their claim is pre-empted by the LIA, Union Pacific has waived that defense because Federal Rule of Civil Procedure Rule 8(c) requires the responding party to "affirmatively state any avoidance or affirmative defense" in its first responsive pleading and Union Pacific failed to do so. *Mem. Opp'n J. Pleadings* at 7, Dkt. 33. Although, Union Pacific contends that the defense is stated in the Affirmative Defenses included in their Answer, the Court disagrees.

In determining whether an affirmative defense has been adequately stated, the key is whether the pleading gives plaintiff fair notice of the defense. *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (finding that plaintiffs had sufficient notice of affirmative defense because they addressed the affirmative defense in their response brief in opposition to defendant's motion for leave to amend the answer). Union Pacific's Second Affirmative Defense states that: "The allegations of Plaintiff's Complaint fail to state a claim upon which relief can be granted." *Answer* ¶ 54, Dkt. 7. Moreover, nothing in the Court record indicates that Union Pacific raised the preemption defense until it filed its Motion for Judgment on the Pleadings. *Id.*; *Mot. J. Pleadings*, Dkt. 30. Simply stated, Union Pacific has not given Stephens fair notice of its preemption defense and has, therefore, failed to comply with Rule 8(c).

While garden-variety defenses are waived if not set forth in the defendant's first responsive pleading, subject matter jurisdiction is open to challenge at any time. Fed. R. Civ. P. 12(h)(3) (A court must dismiss an action if it determines "at any time" that it lacks subject matter jurisdiction); ( *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007); *see also Conforte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1992); *Lesson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976, fn. 12 (9th Cir. 2012) ("Subject matter jurisdiction can never be forfeited or waived"). Subject matter jurisdiction "refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived."

However, field preemption does not call into question the Court's power to adjudicate the case. Rather, it is a defense that has to be plead as an affirmative defense. "Generally, the question of federal preemption is relevant only as a defense ...." 29 A Fed. Proc., L.Ed. § 69:17 (2006). *See also Rivet v. Regions Bank of La.*, 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912, (1998) ("[F]ederal preemption is ordinarily a defense ...."), 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ.3d § 1271 (2006). A number of courts have held the same. *Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d Cir.2003) (ERISA preemption); *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260 (9th Cir.1996) (Fair Debt Collection Act preemption); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444 (1st Cir.1995) (ERISA preemption); *Jordan v. Clayton Brokerage Co. of St. Louis, Inc.*, 975 F.2d 539, 541 (8th Cir.1992) (Commodity Exchange Act preemption); *DIRECTV, Inc. v. Barrett*, 311 F.Supp.2d 1143, 1147 (D.C.Kan.2004) ("The court holds here that preemption is an 'avoidance or affirmative defense' that must be pleaded pursuant to Fed.R.Civ.P. Rule 8(c)."); *Williams v. Ashland Eng'g Co.*, 863 F.Supp. 46 (D.C.Mass.1994); *Kenepp v. Am. Edwards Labs.*, 859 F.Supp. 809 (D.C.Pa.1994), Kennan v. Dow Chem. Co., 717 F.Supp. 799 (D.C.Fla.1989); *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, on November 15, 1987*, 721 F.Supp. 1185 (D.C.Colo.1988); *Integrated Bar Coding Sys., Co. v. Wemert,* No. 04-60271, 2007 WL 496464, at *9 (E.D. Mich. Feb. 12, 2007).

"Preemption, moreover, does not normally concern the subject-matter jurisdiction of a court to hear a claim, which is what is relevant to the resolution of a Rule 12(b)(1)

motion. Rather, the doctrine generally concerns the merits of the claim itself—namely, whether it is viable and which sovereign's law will govern its resolution. That is why litigants typically invoke preemption as a defense to state-law claims asserted in state or federal court, not as a jurisdictional defect." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004).[3] Accordingly, the Court will find that Union Pacific has waived the preemption defense.

## II.     Summary Judgment

The Stephens' Complaint alleges negligence, gross negligence/recklessness, and loss of consortium.[4] However, none of these claims have merit unless the Stephens can first prove exposure. Even though there is no Idaho case law directly on point, Union Pacific is correct that most courts require that a plaintiff establish exposure as a "threshold matter" in asbestos litigation. *See e.g. Menne v. Celotex Corp.*, 861 F.2d 1453, 1461–62 (10th Cir. 1988) (plaintiff must prove exposure to defendant's products because without proof of actual exposure, there could be no proximate cause, and the simple fact that the plaintiff worked at a job site where defendant's asbestos products were used was insufficient to establish actual exposure.); *Roehling v. Nat'l Gypsum Co. Gold Bond Bldg.*

---

[3] The Court might have granted a motion to amend the answer in order to raise the affirmative defense, but no such motion was filed. *Schneider v. Wilcox Farms, Inc.*, No. C07-1160JLR, 2008 WL 2367183, at *2 (W.D. Wash. June 6, 2008).

[4] As noted above, Plaintiffs' counsel stated during oral argument that they were foregoing Count III of the Complaint. Accordingly, only Counts I, II, and IV are at issue.

*Products*, 786 F.2d 1225, 1228 (4th Cir.1986) (plaintiff must establish that he "was in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area . . . inhaled"); *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1485 (11th Cir.1985) (plaintiff must "prove exposure to a particular defendant's product at some time and place"); *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1144–45 (5th Cir.1985) (plaintiff must provide evidence that asbestos fibers from the defendant's products were a substantial causative factor). The Court will apply the same standard to this case.

Here, Stephens himself provides the only potential evidence of exposure. But his testimony falls far short of what is needed. He is unable to show that any of the products or materials his father worked with or around contained asbestos, he is unable to provide a factual basis for his understanding that his father was a mechanic, and he has simply speculated that his Father worked on engines. *Def. Statement of Undisputed Facts*, ¶¶ 18 & 26.[5] Stephens likewise could not testify that any specific products his Father worked with contained asbestos. *Id.* ¶ 23. To Stephens' credit, he admits that he is trying to recall information from decades ago, and he does not appear to try to make up memories or embellish what he does remember. But unfortunately, without more concrete memories, his claims against Union Pacific fail.

---

[5] The Court references paragraphs of the Defendant's Statement of Facts for ease of reference. However, those paragraphs cross-reference specific evidentiary testimony in the record which the Court is relying upon for its conclusions.

Additionally, even if plaintiffs had provided some evidence of exposure, they fail to provide evidence that exposure to Union Pacific attributable asbestos caused or contributed to Stephens' disease. Idaho uses the substantial factor test. *Garcia v Windley,* 164 P.3d 819, 823 (Idaho 2007). The "substantial factor" test is applied when there are multiple possible causes of injury. *Id.* The substantial factor test allows recovery when a defendant's negligence may have concurred with another cause of the injury, "even though it could not be established that the damage to the plaintiff would not have occurred 'but for' the defendant's negligence." *Doe v. Sisters of Holy Cross,* 895 P.2d 1229, 1233 (Idaho Ct. App. 1995) (Internal citation omitted).

Idaho case law does not set forth a standard for applying the substantial factor test in asbestos cases. "In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case. In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir. 1980).

Recently, the Ninth Circuit addressed the substantial factor test applying Arizona law. *See Goulbourn on behalf of Caulbourn v. Crane Co.,* 728 Fed.Appx. 679, 681 (9th Cir. 2018). Similar to Idaho, Arizona applies the substantial factor test "when multiple tortfeasors are alleged to have created an indivisible injury and each defendant's causal role is potentially indeterminable. . . ." *Id.* (citing *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.,* 231 P.3d 946, 950 (Ariz. 2010)). Citing the Restatement (Second) of

Torts, Arizona explains that an independently sufficient cause is a substantial factor. *Id.* (citing Restatement (Second) of Torts § 432(2) (Am. Law Inst. 1965)). There is no reason to believe that Idaho would not also rely on the Restatement. And applying that standard here, the Stephens have not provided sufficient evidence that William Stephens' disease was independently caused by take home exposure from his father.

For the reasons explained above, the Court will grant summary judgment in favor of Union Pacific. In turn, the Court will deny the Stephens's motion for partial summary judgment.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Judgment on the Pleadings (Dkt. 30) is **DENIED**.

2. Defendant's Motion to Take Judicial Notice (Dkt. 31) is **DEEMED MOOT**.

3. Defendant's Motion for Summary Judgment (Dkt. 39) is **GRANTED**.

4. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 40) is **DENIED**.

5. The Court will enter a separate judgment in accordance with F.R.C.P. 58.

DATED: October 1, 2018

B. Lynn Winmill
Chief U.S. District Court Judge